UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LANDON GREGORY QUENZER,<br><br>Defendant. | CR 17-40046<br><br>RESPONSE TO MOTION FOR SENTENCE REDUCTION/ COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i) (DOCKET #62) |

The United States, by and through the undersigned Assistant United States Attorney, John E. Haak, files this response opposing the defendant's Motion for Sentence Reduction/Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i).

**FACTUAL BACKGROUND**

Defendant Landon Gregory Quenzer pled guilty to Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendant was sentenced to 240 months imprisonment on the conviction. *Id.* He is currently serving his sentence at FCI Milan in Milan Michigan, with an anticipated release date of August 20, 2026. https://www.bop.gov/inmateloc/. FCI Milan has one current case and has had 2 employees have had COVID-19 and has had 88 inmates and 55 employees recover. https://www.bop.gov/coronavirus/ (last accessed October 26, 2020). Defendant is 20 years old. https://www.bop.gov/inmateloc/.

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in

limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane,* 489 U.S. 288, 309 (1989) (plurality opinion). Consistent with that principle of finality, Section 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced "based on" a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

The compassionate release statute provides, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . .

18 U.S.C. § 3582(c)(1)(A).

## ARGUMENT

### I. PROCEDURAL HISTORY OF DEFENDANT'S COMPASSIONATE RELEASE REQUEST

On June 19, 2020, Defendant made a request for compassionate release to the Warden at FCI Milan. A response from the Warden denying the request is

dated July 2, 2020. Defendant filed his motion with this Court on or about September 1, 2020.

Thirty days have passed since the Warden received Defendant's request for compassionate release. Accordingly, Defendant has exhausted his administrative remedies. *Brunston,* Doc. 68, at p. 4.

## II. REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED.

### A. Applicable law.

This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[1]  The defendant has the burden to show circumstances meeting the test for compassionate release.

As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary."  *United States v. Willis,* 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted). Additionally, even if a defendant meets all the criteria for compassionate release, the defendant is not automatically entitled to a sentence reduction. The Court must consider the compassionate

---

[1] Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." The statute also states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

release motion along with the Section 3553(a) factors to the extent they are applicable.

The pertinent policy statement is set forth at United States Sentencing Guidelines (USSG) § 1B1.13. It prohibits this Court from reducing a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[2]

The Sentencing Commission also provided explicit examples of what constitutes an "extraordinary and compelling circumstance":

(A) **Medical Condition of the Defendant.—**
   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant** — The Defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health

---

[2] While district courts disagree about whether the First Step Act alters the binding nature of USSG § 1B1.13, "the limited statutory exceptions to the general rule of finality of judgment" counsels in favor of following the Sentencing Commission's guidance. *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *see also United States v. Willingham*, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (collecting cases).

> because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.
>
> (C) **Family Circumstances.** —
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.
>
> (D) **Other Reasons.**— As determined by the Director Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). [3]

USSG § 1B1.13 cmt. n.1.

To qualify for compassionate release after having exhausted his or her administrative remedies with the Bureau of Prisons, a defendant must be able to demonstrate one of the listed reasons in (A)–(C) above. *See United States v. Shields*, 2019 WL 2645028, at *2 (N.D. Cal. June 27, 2019). The defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

---

[3] This final provision is often called the "catch-all" provision. This Court recently discussed how the Sentencing Commission's lack of quorum since the First Step Act was passed arguably impacts whether the policy statement at U.S.S.G. § 1B1.13 still applies. *See United States v. Morehouse*, Case No. 18-40019 at Doc. 121 (June 1, 2020). Specifically, the Court noted that "'several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges.'" *Id.* at 5 (*quoting United States v. Condon*, 2020 WL 2115807, at 3) (additional citations omitted)). The government respectfully disagrees because the statute's plain language vests the authority to apply this "catch-all" provision solely with the "Director of the Bureau of Prisons."

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, Defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as relevant here,[4] (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his motion must be denied.

A defendant that cannot demonstrate that he is at has a medical condition that puts him at risk for COVID-19 cannot demonstrate "extraordinary and compelling" circumstances. *United States v. Bradley,* 5:09-CR-50029-KES, Doc. 407, at p.5 (D.S.D. Jun. 5, 2020). "COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. These include a compromised immune system, chronic lung disease, diabetes, kidney disease, heart disease, and asthma." *Id.* (*citing Groups at Higher Risk for Severe Illness,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated May 14, 2020)). Indeed, before the outbreak of COVID-19, district courts addressing § 3582(c)(1)(A) claims routinely noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United*

---

[4] Defendant is not relying on his age or family circumstances, and so those provisions (including Application Note 1(A)(ii)(III)) are not applicable.

States v. Ayon-Nunez, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). Compassionate release is "rare" and "extraordinary" and courts routinely denied such claims prior to the current national emergency. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release. . . is an extraordinary and rare event." (citation omitted)).

The existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. *See United States v. Raia*, 954 F.3d 594 (3rd Cir. Apr. 2, 2020) (Third Circuit holding that the existence of COVID-19 alone does not constitute a basis for granting compassionate release). The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. "[T]here is still much that is unknown about how this virus affects individuals, and this Court cannot say to what extent [defendant's] life is threatened by the existence of COVID-19." *United States v. Young Bird,* 3:18-cr-30061-RAL, Doc. 188 at 8 (D.S.D. June 3, 2020). The United States agrees. The United States does not minimize the seriousness, but Defendant must meet his burden for compassionate release. As discussed below, Defendant has failed to do so here.

### B. BOP Has Taken Significant Measures.

Although there are risks in an institutional setting, BOP has taken significant measures to protect the health of inmates in its charge. BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division,

Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), at [https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf](https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf). (last accessed June 5, 2020). That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates. Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization. On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities.

Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis. For example, beginning April 1, 2020, BOP implemented Phase Five of the Action Plan, and on April 13, 2020, BOP implemented Phase Six, which currently governs operations. The Action Plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the

movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training. All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

The Action Plan is comprised of several additional preventive and mitigation measures, including suspension of social visitation, internal inmate movements, legal visits, official staff travel, training, access by volunteers and many contractors; extensive screening of staff and inmates (including screening of all new inmates); quarantine; and modified operations to maximize social distancing as much as practicable. *See* Federal Bureau of Prisons, BOP Implementing Modified Operations, *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed May 15, 2020). All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp (last

viewed May 15, 2020).

### C. Defendant Has Not Presented Extraordinary and Compelling Reasons for His Release.

This Court may not reduce Defendant's sentence unless it finds that "extraordinary and compelling reasons," as defined by USSG § 1B1.13, exist, warranting such reduction. He has failed to show that its impact on him, specifically, constitutes "extraordinary and compelling reasons" warranting his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A). It is defendant's burden to establish "extraordinary and compelling reasons." *United States v. Heromin,* 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

While COVID-19 is undoubtedly serious, and the situation is dynamic, Defendant has not met his burden to demonstrate compelling and extraordinary circumstance warranting his immediate release. Thus, the Court should likewise find that Defendant's "circumstances do not clear the high bar necessary to warrant a sentence reduction under USSG § 1B1.13 comment note 1(D)." *Brunston,* at Doc. 68, p. 7.

Pursuant to the policy statement issued by the Sentencing Commission, Defendant must show either that (i) he is suffering from a terminal illness, defined as "a serious and advanced illness with an end of life trajectory," or (ii) that the defendant is suffering from a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. §1B1.13 Application Note 1(A). Defendant's application for reduction in sentence fails on both accounts.

First, he does not have a terminal illness as defined above. Doc. 64. Second, Defendant has not shown that he is suffering from a "serious physical or medical condition," "functional or cognitive impairment," or "deteriorating

physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self care." In fact, Defendant has not even alleged any medical conditions. *Bradley,* Doc. 407, at p. 5 (defendant not show BOP's response to pandemic inadequate); *United States v. Morehouse,* 4:18-CR-40019-KES, Doc. 121, at p. 6 (D.S.D. Jun. 1, 2020) (same). The medical records do not support that Defendant is unable to provide self care. *See United States v. Korn,* 2020 WL 1808213, at *5 (W.D.N.Y. Apr. 9, 2020) (defendant can walk with a cane, dress, bathe, eat and perform activities of daily living).

Defendant has not alleged the catch-all provision. The catch-all provision in Application Note 1(D) is inapplicable to this situation. It provides as follows: "Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG § 1B1.13 cmt. n.1. In turn, BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. *See* https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last accessed May 15, 2020). In this case, the Director of BOP did not identify any "extraordinary and compelling reason" under this application note; therefore, it does not apply.

However, it is not necessary for the Court to decide if the catch-all provision is applicable because, even if it applies, Defendant has not satisfied the provision. Defendant's medical records do not indicate he has any medical conditions that put him at a higher risk if he contracts COVID-19. Defendant also cannot meet his burden for compassionate release when he "has not shown that the BOP's response to the pandemic at FCI Milan has been inadequate in any way." *Bradley,* Doc. 407, at p. 5 (*citing United States v. Korn,* 20209 WL

1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("[T]he mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *Morehouse,* Doc. 121, at p. 6.

### III. SECTION 3553(A) FACTORS WEIGH AGAINST DEFENDANT'S RELEASE.

Defendant has already received a downward departure. His criminal history shows that he is unlikely to follow conditions of supervision if released early. The very nature of the crime does not warrant an additional reduction. Such a reduction would not be a deterrent and would be a disparity in sentencing as to other similarly situated individuals.

Accordingly, in light of the Defendant's record and the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

### IV. IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH STRICT AND SPECIFIC LIMITATIONS.

If the Court is inclined to grant the Defendant's motion for compassionate release, it should substitute a term of probation or supervised release with a condition of home confinement for the duration of the Defendant's current sentence of imprisonment. The government submits that releasing the Defendant outright would not appropriately re-balance the § 3553 factors of this case. To minimize risks to public health, the government also respectfully requests that the Court (1) order any release only after the defendant's release and travel plans are in place, and (2) set any release 14 days from the date of its order to accommodate BOP's ability to quarantine the defendant prior to his release to protect the community from potential further spread.

## CONCLUSION

Based upon the foregoing, the Defendant's motion for compassionate release should be denied.

Dated and electronically filed October 28, 2020.

> RONALD A. PARSONS, Jr.
> United States Attorney
>
> _____/s/ JOHN E. HAAK_____
> John E. Haak
> Assistant United States Attorney
> P.O. Box 2638
> Sioux Falls, SD 57101-2638
> Telephone: (605)357-2352
> Facsimile: (605)330-4410
> E-Mail: john.haak@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on October 28, 2020, a true and correct copy of the foregoing was served upon the Defendant by placing the same in the service indicated as follows:

Landon Gregory Quenzer
#17066-273
FCI Milan
Inmate Mail/Parcels
P.O. Box 1000
Milan, MI 48160

> _____/s/ JOHN E. HAAK_____
> John E. Haak
> Assistant United States Attorney