UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LANDON GREGORY QUENZER,<br><br>Defendant. | 4:17-CR-40046-01-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Landon Gregory Quenzer, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 62. Plaintiff, the United States of America, opposes the motion. Docket 69. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On November 21, 2017, Quenzer pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 34, 40. On February 2, 2018, the court sentenced Quenzer to 240 months in custody followed by 10 years of supervised release. Docket 51; Docket 52 at 2-3. The court later reduced Quenzer's sentence to 120 months in custody followed by 10 years of supervised release. Docket 61 at 2-3.

Quenzer is incarcerated at Federal Correctional Institution (FCI) Milan in Milan, Michigan. Docket 62 at 2; *see also* Docket 64 at 29. As of December 7, 2020, there are currently 25 active COVID-19 cases among FCI Milan's inmates and staff, 3 deaths from COVID-19, and 140 inmates and staff have recovered from COVID-19. *See BOP: COVID-19 Update*, Fed. Bureau of Prisons,

https://www.bop.gov/coronavirus/ (last visited on Dec. 7, 2020).

Quenzer is 30 years old. Docket 64 at 1. Quenzer claims his medical conditions include asthma and obesity. Docket 62 at 1.

On June 15, 2020, Quenzer completed an Inmate Request to Staff form, requesting that he be considered for home confinement due to COVID-19. Docket 62-1 at 2; Docket 64 at 53. On June 19, 2020, the warden received Quenzer's request. Docket 62-1 at 2. On July 2, 2020, the warden denied Quenzer's request. *Id.* at 3; Docket 64 at 54. On September 1, 2020, Quenzer filed a pro se motion with the court for relief under the First Step Act. Docket 62.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety

2

of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Quenzer argues that the risk posed by the global COVID-19 pandemic, together with his adverse health conditions satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 62 at 1-2.

### I. Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18

Quenzer submitted a request for compassionate release due to COVID-19 on June 15, 2020. The warden received the request on June 19, 2020. The 30-day period expired on July 19, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Quenzer's motion is ripe for review on the merits.

### II. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant

3

compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons (BOP). U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr.

4

29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). The uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Quenzer has failed to show that his medical conditions rise to extraordinary and compelling circumstances.

Quenzer contends that his circumstances warrant compassionate release

5

under 18 U.S.C. § 3852(c)(1)(A). Docket 62 at 1. Quenzer argues that his obesity and asthma put him at high-risk of severe illness if he contracts COVID-19. *Id.* at 1-2. Quenzer did not articulate which category his circumstances fall within under the extraordinary and compelling reasons provision. Thus, the court will analyze his circumstances under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from organ transplant, smoking, obesity, heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Dec. 1, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *may* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, overweight, liver disease, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Quenzer's medical conditions include stimulant disorder and pain in his leg. Docket 64 at 12. Quenzer claims that he suffers from obesity and asthma. Docket 62 at 2. Upon review of his medical records provided by the BOP, neither obesity nor asthma are indicated as a health condition that Quenzer

6

suffers from or is being treated for. Docket 64 at 12.

Quenzer's medical conditions—stimulant disorder and pain in his leg—are not listed as medical conditions that might increase or do increase the risk of severe illness from COVID-19. The pain in his leg was treated through medication, which he is no longer taking. *Id.* at 29. His medical records reflect minimal clinic visits, which leads this court to believe that Quenzer is adequately healthy. See *id.* at 15, 17. Additionally, Quenzer has not identified how his medical conditions prevent him from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances.

The court believes that Quenzer's medical conditions are appropriately managed at FCI Milan, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates Quenzer's health conditions, such ailments, coupled with the present conditions at FCI Milan, do not establish extraordinary and compelling reasons justifying his early release.

Even assuming Quenzer's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Quenzer pleaded guilty to conspiracy to distribute a controlled substance of 21 U.S.C. §§ 841(a)(1) and 846. Quenzer held an active role as a co-conspirator. Docket 46 ¶¶ 7-8, 12. Quenzer supplied his co-conspirator with methamphetamine, participated in drug exchanges, and stored the drugs at a

7

local business owned by his grandfather. *Id.* ¶¶ 8, 11-12, 70. Approximately 2,321 grams of actual methamphetamine and 2,566.5 grams of methamphetamine were attributed to the defendant. *Id.* ¶¶ 13-14. Quenzer had an offense level of 33 and was in criminal history category IV. *Id.* ¶¶ 29, 42. Quenzer's guideline range was 188 to 235 months. *Id.* ¶ 76. The offense had a mandatory minimum sentence of 240 months in custody. *Id.* ¶ 76. The court sentenced Quenzer to the mandatory minimum. Docket 52. Additionally, the court recently reduced Quenzer's sentence. Docket 61. Quenzer's current sentence of 120 months is already less than the offense's mandatory minimum of 240 months. Therefore, the court finds that Quenzer's sentence of 120 months in custody with 10 years of supervised release continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Quenzer has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 62) is denied.

Dated December 9, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE